ERK, trustee, *v.* SIMPSON.

A fruit grower and a produce company entered into a written contract whereby, " for and in consideration of a thousand dollars (represented by a check duly certified) this day delivered," the fruit grower agreed to deliver " f. o. b. at Rome, Ga., first ten car-loads of peaches of the Elberta variety, and the said second party hereby contracts and agrees to pay to the party of the first part eighty-five cents per crate of six baskets for all good, sound, hard peaches which are approved and accepted by party of the second part through its authorized agent at Rome, Ga., the peaches to be paid for when accepted and loaded in the cars at Rome, Ga., and the bill of lading delivered to the party of the second part. The one-thousand-dollar check referred to in this contract to be returned to the party of the second part when all of said purchase-price of said peaches is paid; provided, however, the same may be used toward paying for the last cars delivered." *Held:*

1. That this contract did not authorize the seller to cash the check at once and keep the money, and at the same time to demand payment for each of three car-loads of peaches as they were shipped, and, on failure of payment of a draft given by the local agent of the buyer for the first car-load, to divert the second and resell it at a loss, the amount of the purchase-price for the two car-loads being less than the amount of money so held by him.

2. Nor, after so diverting the second car-load, which had been received and approved by the agent of the buyer as provided by the contract, could the seller tender a third car-load, and, upon its refusal, sell it and hold the buyer liable in damages for the difference between the amount realized and the amount which such car-load would have brought at the contract price.

(a) There is no evidence in the record tending to show a waiver or assent on the part of the purchaser to a deviation from the terms of the contract on the part of the seller.

3. Some parts of the defendant's answer were demurrable; but as the same grounds of demurrer covered some allegations which were good and some which were bad, and as the ruling above made deals with the merits of the defenses, the grounds of the demurrer need not be considered in detail.

4. Where a witness had testified that he had been engaged in marketing peaches and other fruits for eighteen or twenty years in the locality where the contract was made and to be fulfilled, and that he kept " posted " as to the prices of fruit in car-load lots in the different markets during the season covered by the contract, by means of daily communications by telegraph, there was no error in permitting him to testify that, from information received at that time, the markets where

the peaches were resold compared favorably with other markets; and that, from a book of the copy telegrams of that year, the market price for Elberta peaches during the season covered by the contract was from a dollar per crate downward, while a few markets between certain dates mentioned quoted the price at a dollar and twenty-five cents per crate. Such evidence was not objectionable as being hearsay.

5. Where the depositions of a witness were taken before a commissioner under the Civil Code (1910), §§ 5910 et seq., and certain objections to parts of the testimony were made and noted, this did not preclude the party against whom the evidence was offered from objecting, at the trial in court, to certain parts of the testimony on the ground that they were hearsay and secondary in character, although such objections were not noted on the examination before the commissioner.

FEBRUARY 16, 1912.

Complaint. Before Judge Maddox. Floyd superior court. December 28, 1910.

W. P. Simpson and the Pittsburg Fruit & Produce Company entered into the following written agreement: "This agreement made and entered into this the 14th day of July, 1906, between W. P. Simpson, of said State and county, of the first part, and the Pittsburg Fruit & Produce Company (incorporated), of Pittsburg, State of Pennsylvania, of the second part, witnesseth, that for and in consideration of one thousand dollars (represented by a check duly certified) this day delivered to the party of the first part by the party of the second part, the party of the first part hereby agrees to deliver f. o. b. at Rome, Ga., first ten car-loads of peaches of the Elberta variety, and the said party of the second part hereby contracts and agrees to pay to the party of the first part eighty-five cents per crate of six baskets for all good, sound, hard peaches which are approved and accepted by the party of the second part through its authorized agent at Rome, Ga., the peaches to be paid for when accepted and loaded in the cars at Rome, Ga., and the bill of lading delivered to the party of the second part. The one-thousand-dollar check referred to in this contract to be returned to the party of the second part when all said purchase-price of said peaches is paid; provided, however, the same may be used toward paying for the last cars delivered. It is agreed that said first party shall not be liable for failure to deliver said ten cars of peaches if such failure is due to providential causes or a strike."

On December 22, 1906, the company brought suit against Simpson. As amended, the petition alleged as follows: The defendant delivered only one car-load of peaches to the plaintiff, the price of

which amounted to $297.50. Another car-load was accepted by plaintiff's agent at Rome, but the defendant diverted it while it was in transit, and it was never finally received by the plaintiff. Defendant shipped only three car-loads of peaches during the year 1906. Under the contract with plaintiff, he was to ship ten car-loads of peaches. He only made three car-loads of peaches of the Elberta variety in that year, and they were of such low grade that they did not come up to the standard fixed by the contract. The defendant had no authority to cash the check when he did so. Having done so, it was an acknowledgment upon his part that the amount would be applied to the payment of the three car-loads of peaches, and he had no authority to apply the check, or the money received thereon, to any other purpose. Having delivered but one car-load on the contract, the defendant became liable to the plaintiff for the balance of the funds remaining in his hands after paying for such car-load. If he suffered any loss by reason of shipping the peaches to any other person, it was his own fault, for which the plaintiff was not liable. About September 5, after all the Elberta peaches were gone, and there was no possibility for the defendant to deliver the other nine car-loads named in the contract, the plaintiff demanded of the defendant the balance of the one thousand dollars, after deducting the amount of the car-load of peaches actually received.

The defendant answered as follows: After the making of the contract the defendant delivered to the plaintiff's agent one car-load of peaches, the price of which amounted to $452.20. The plaintiff's agent delivered to the defendant a draft for that amount drawn on the plaintiff. It was forwarded for collection, and was dishonored and returned to the defendant. Prior to such dishonor the defendant delivered to the plaintiff's agent another car-load of peaches, and the agent executed to him a second draft for $446.25 to cover the purchase-price thereof. Before this second car reached its destination, the defendant learned that the plaintiff had refused to pay the first draft. Thereupon the defendant diverted the second car, because of the dishonor of the first draft, and the consequent breach of the contract. From the proceeds of the second car he received $116.54, thereby sustaining a loss of $329.71, the difference between the amount of the draft given therefor and the amount so received. The defendant tendered to the plaintiff's agent an-

other car-load of peaches containing 525 crates. This car-load the plaintiff refused to accept, and the defendant shipped it to Providence, R. I., and realized therefrom the sum of $71.83, thus sustaining a loss of $374.42. After receiving notice of the dishonor of the draft given by the plaintiff's agent for the first car-load, the defendant notified the agent that he intended to resell the peaches bought by the plaintiff of the defendant, and hold the plaintiff liable for the difference in price realized on the sale and the contract price. In making the resale of the two car-loads, the defendant exercised his best judgment in selecting the market in which to sell them, so as to realize the best price for said peaches. He has always been ready to perform the terms of the contract binding on him, and so notified the agent of the plaintiff; but the latter declined to accept the peaches in accordance with the contract. He suffered damages to the extent of $1,156.33 on the three car-loads of peaches. For this he prayed to recover judgment. While the case was pending the plaintiff became a bankrupt. The trustee was made a party plaintiff, and the case proceeded. So far as necessary to an understanding of the decision, the evidence is stated in the opinion. At the close of the evidence, the court directed a general verdict for the defendant. The plaintiff moved for a new trial, which was refused. He excepted to this ruling and to the overruling of a demurrer to certain parts of the answer.

*George A. H. Harris & Son,* for plaintiff.

*Dean & Dean,* for defendant.

LUMPKIN, J. The purchaser of certain peaches brought suit against the seller, under the contract set out in the statement of facts, to recover the balance of the $1,000 represented by the certified check, after deducting the purchase-price of the peaches received. The court directed a verdict for the defendant, and the plaintiff excepted.

1. Under the contract, the certified check for $1,000 was placed with the seller apparently to guarantee payment for the peaches purchased, or to be used in paying for the last of those delivered. They were to be paid for when accepted by the agent of the purchaser at Rome, and loaded in cars at that place, and the bill of lading delivered to the purchaser. The certified check was to be returned to the purchaser when all of the purchase-price was paid, provided that it might be used toward paying for the last cars de-

livered. There is not a word in the contract indicating that such check was put up as a forfeit or as liquidated damages for a breach of contract. The seller was given no authority to cash the check, unless for the purpose of paying for the last cars of peaches agreed to be shipped. The contract to return the check negatived any right of the holder to cash it for other purposes, and so render himself unable to return it. There is no hint in the contract that the parties intended that the seller should cash the check at once, have the use of the $1,000 represented by it during the whole season, and require the purchaser to pay for the peaches as each car was delivered, and thus have in his hands, and subject to his use, both the $1,000 and the price of the peaches. When the seller, on the same day that he received this check (or draft, as it is also called), and before delivering any peaches, cashed it (as was admitted), he violated the contract. It was argued in the brief of counsel for defendant in error that the purchaser waived this, because such purchaser " paid the draft." The evidence did not disclose that the check or draft was drawn on the purchaser. If it was a check, it must have been drawn on a bank. Besides, it was a " certified " check or draft, and there is nothing in the record to show that the purchaser could have stopped payment.

2. Four days after delivering the first car-load of peaches, the seller delivered to the buyer, through its agent at Rome, a second, which the agent inspected and accepted. After this delivery, the seller's agent learned that the draft given by the buyer's agent on his principal for the price of the first car-load had not been paid; and thereupon the seller diverted the second car-load, which was in transit, sent it to Ohio, had it sold, and charged to the buyer the difference between the agreed price and what was received under the sale. What right the seller had to do this is not apparent. The contract provided for delivery of the peaches " f. o. b." Rome, Ga.," upon approval and acceptance by the buyer's agent there, and delivery to the purchaser of the bill of lading. The second car was inspected, accepted, and delivered. While the shipper may have a right of stoppage in transitu, when the vendee becomes insolvent before he obtains actual possession (Civil Code, 1910, § 2739), we know of no law which authorized the seller to take the car-load of peaches away from the purchaser, after such a delivery, because the purchaser had not paid the draft for the first car-load, and

deal with the second car-load as if refused. There was no evidence that the purchaser had then become insolvent. The seller had $1,000 of the purchaser's money in his hands. This was more than the price of both car-loads of peaches. He was in no danger whatever of loss on those two cars. He could not at the same time break the contract and insist on its performance by the other party.

There was some evidence, not in entire accord, as to whether the agent of the seller actually tendered or offered other peaches to the agent of the purchaser, or whether he only said he could get up eight car-loads in addition to the first two, by getting his neighbors to join with him; and also as to whether such peaches would have been of the quality called for by the contract. But aside from this, when the seller cashed the check, and, after delivering a second car-load of peaches to the defendant at Rome, took it away by diverting it and selling it elsewhere because a draft for the first carload had not been paid, the buyer was not compelled to receive further car-loads. The purchaser was entitled to have restored to it the $1,000, after deducting the amount due for the car-load of peaches which it received and failed to pay for. And the purchaser having become bankrupt pending the case, the trustee in bankruptcy, who was made a party, could recover.

3. Some parts of the defendant's answer were demurrable; but inasmuch as the same grounds of demurrer covered some allegations which were good and some which were bad, and as the ruling made above deals with the merits of the defenses, it is unnecessary to discuss the grounds of demurrer in detail.

4. Proof of market price in certain markets necessarily involves a hearsay element, and is not subject to the same strictness of rule as proof of a physical fact or occurrence. The fourth headnote requires no elaboration. *Central Railroad Co.* v. *Skellie,* 86 *Ga.* 686 (4), 692 (12 S. E. 1017); *Armour & Co.* v. *Ross & Barfield,* 110 *Ga.* 403, 412 (35 S. E. 787).

5. The depositions of a witness were taken before a commissioner under the Civil Code (1910), §§ 5910 et seq. Before the commissioner certain objections to parts of the testimony were made and noted. On the trial of the case in the superior court, other objections were raised to the testimony, on the ground that it was hearsay and secondary in character, and stated the conclusions of the witness. The court held that such objections should have been

made at the time when the testimony was taken, and refused to entertain them when the depositions were read on the trial. This was error. The Civil Code (1910), § 5913, declares that all motions or applications to postpone or adjourn the proceedings, "and all objections to the witnesses or proceedings, shall be made to the commissioner, and, if in writing, filed with the return, and, if not in writing, noted in and become part of the return, with the ruling of the commissioner thereon, and the answer of the witnesses, whether the objection be sustained or not." It will be observed that this section requires applications for postponement or adjournment, and " all objections to the witnesses or proceedings," to be made to the commissioner. Such objections are to be noted and returned with the answers of the witnesses, whether the objection be sustained or not. The language used indicates rather objections to witnesses and the form of procedure, than substantial objections to the competency or relevancy of certain parts of the evidence. We do not think that it was the intention of the legislature to require the admission of secondary or hearsay evidence where no objection thereto was made before the commissioner. See, in this connection, *Georgia Ry. & El. Co.* v. *Bailey*, 9 *Ga. App.* 106 (70 S. E. 608). This construction harmonizes the practice with that where the evidence is taken by interrogatories, though of course the two methods of obtaining testimony are not identical. No doubt good reasons might be suggested why, in taking depositions, where both parties have the right to be present, to make objections, and to examine the witnesses, objections ought to be noted, so that the adverse party might conduct his examination accordingly. But we can not hold that the legislature has required that all objections to evidence on the ground of being secondary or irrelevant or hearsay should then be made, under penalty of waiving the right to urge such objections on the trial. As the rulings of the presiding judge in regard to the objections made to certain evidence appear to have been based on the ground that they could not be made before him because not made before the commissioner, and not upon the merits of the objections, we deal with the question in the same manner.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*