34080.   HAMILTON *v.* PULASKI COUNTY.

DECIDED SEPTEMBER 13, 1952.

*Robert Carpenter, James L. Flemister, Ferrin Mathews,* for plaintiff in error.

*J. Ralph McClelland Jr., John L. Westmoreland Sr., John L. Westmoreland Jr.,* contra.

SUTTON, C.J. ■ In special ground 1 of the motion for a new trial, the defendant assigns error on a ruling of the trial judge allowing the plaintiff to withhold from the jury certain parts of both the direct and cross-examinations of W. A. Sapp and J. F. Lee on depositions taken at the instance of the plaintiff. Special grounds 3, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, and 16 of the motion complain of the exclusion of this same testimony when offered by the defendant on the trial of the case before the jury. To

determine whether this evidence was relevant to any issue in the case, the trial judge allowed both parties to submit evidence to him out of the presence of the jury. The evidence submitted was largely that which was in question, and it was to the following effect: Pulaski County had paid $1600 for the 1947 Chevrolet automobile which was stolen from the county during J. F. Lee's tenure as county commissioner, and while he had custody of the car. J. F. Lee had taken out theft insurance in the amount of $1600 on the car, and received this amount from the insurance company under a "loan receipt." Upon going out of office on December 31, 1948, Lee paid $1600 to the county in lieu of returning the automobile which had been stolen. The only evidence submitted as to the value of the car was the testimony of J. F. Lee, that the amount of money for which he had had the car insured was not the value of the car because cars had advanced in price since he had purchased the automobile, and that the reasonable value of the car when it was stolen was $2000, and, as to the inflated value, a second-hand Chevrolet in good condition with practically the same mileage was offered to him for $2250.

It is contended that, if this evidence had been admitted, the jury could have found that the title to the car was in J. F. Lee or, by reason of assignment from him, was the insurance company, and it is further contended that the evidence was admissible to show that the plaintiff county was entitled to recover only the excess of the fair market value and the hire of the automobile over the $1600 which the county had received from Lee.

The trial judge correctly ruled, as a matter of law, that this evidence was insufficient to raise an issue for submission to the jury as to whether either the legal title to, or the complete beneficial interest in, the stolen automobile had passed from the county to someone not a party to the suit. As stated in *Atlanta Cadillac Co.* v. *Manley*, 29 *Ga. App.* 522 (2) (116 S. E. 35): "But where, as here, the alleged amount of loss sustained by the insured exceeds the payment made by the company, since the wrongful act is indivisible and gives but one cause of action [citing], and especially where there has been no legal assignment to the company, and the assured retains not only the legal

but a beneficial interest in the action for the amount of loss exceeding the insurance, the tendency of the courts is to hold that the action must be brought in the name of the insured, and that the insurer is not a necessary or proper party." In the present case, it was not shown that the $1600 paid to the county by Lee represented the full value of the stolen automobile. Even if the loan receipt made out by Lee were binding upon the county, the loan receipt expressly stated that it did not transfer title to the automobile or assign the cause of action for its recovery to the insurance company. See *McCann* v. *Dixie Lake & Realty Co.*, 44 *Ga. App.* 700 (162 S. E. 869). The loan receipt does not disclose that Lee was acting for the county in executing it, and with regard to its tranfser of Lee's interest, it appears here, as it did in *Lee* v. *Hamilton*, 83 *Ga. App.* 59 (62 S. E. 2d, 419), that the cause of action for the car or its value was not in Lee, but in the county, and therefore Lee in his own right had nothing to assign.

The evidence in question was offered to show that title was not in the plaintiff; but, as it was insufficient to raise such an issue, it was irrelevant. Objection to the relevance of evidence may be made at any time during the trial, and so the plaintiff did not waive its right to move to exclude the irrelevant portions of the depositions by failing to note such objections upon the taking of the depositions. *Georgia Ry. & Elec. Co.* v. *Bailey*, 9 *Ga. App.* 106 (3) (70 S. E. 607); *Erk* v. *Simpson*, 137 *Ga.* 608 (5) (73 S. E. 1065); *Bell* v. *Washam*, 82 *Ga. App.* 63 (4) (60 S. E. 2d, 408).

Special grounds 1, 3, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15, and 16 of the motion for a new trial show no error.

■ Special grounds 2 and 8 complain of the court's overruling objections made at the trial to certain leading questions asked by counsel for the plaintiff in conducting the direct examination of W. A. Sapp at the time his deposition was taken. These grounds do not show that any such objections to the form of the questions were noted when the depositions were being taken, so as to give counsel conducting the examination an opportunity to frame proper questions. The objections to the questions as leading were thereby waived. "Objections as to the competency and relevancy of the evidence need not be made at the taking

of the depositions. The objections which must be made at that time, or which otherwise will be considered to be waived, are restricted to those affecting the formal development of the evidence." *Georgia Ry. & Elec. Co.* v. *Bailey,* 9 *Ga. App.* 106 (3) (supra). Also see *Richardson* v. *Roberts,* 23 *Ga.* 215, 219 (1). Code § 38-2304 refers to formal objections, and requires that they be noted in the return. By waiting until the depositions were being read to the jury, the defendant waived his right to object to the form of the questions, and grounds 2 and 8 of the motion do not show error.

■ Ground 13 contends that the court erred in excluding a part of the testimony by deposition of J. F. Lee, elicited on cross-examination by the defendant, to the effect that Lee's son had notified the insurance company of the loss of the county's automobile. This evidence was irrelevant for the reasons stated in division 1 of this opinion, and the trial judge did not err in excluding it.

■ Special ground 17 contends that the trial judge erred in admitting evidence over the objections of the defendant. The part of the transcript set out in this ground shows that the plaintiff's counsel questioned his own witness, H. B. Freeman, as to what he had asked Hamilton, the defendant, about the automobiles which Freeman had come to check. The ground of the objection was, "We are entitled to restrict him to the issue of what we are called upon in the pleadings to defend." After Freeman had testified that the motor numbers had been changed on two cars which he checked, counsel for the defendant made the following objection: "There's one car involved in this lawsuit; what other cars he's talking about I don't see is relevant or material and I move to exclude it." After Freeman had testified that Hamilton had said that Rogers was driving one of the cars and Hamilton's wife was driving the other, counsel for the defendant moved to strike the testimony that Hamilton said his wife was driving a car unless it was identified as the car in question.

As to the witness's making a check on more than one car on the defendant's car lot, similar testimony had already been introduced without objection, and, during the cross-examination of the same witness, testimony to the same effect was elicited from

him without objection. The cars were later identified, and it was clearly shown that the car driven by Mrs. Hamilton was not the car in question. This ground of the motion is without merit.

■ Grounds 18, 19, 20, 22, and 23 complain that the movant's right to a thorough and sifting cross-examination of the witnesses for the plaintiff was abridged. It is contended in special ground 18 that the court erred in excluding the testimony of H. B. Freeman, a witness for the plaintiff on cross-examination by the defendant, to the effect that he found out whether the car in question was insured or uninsured. The answer excluded did not disclose whether the car was insured or not, and therefore the exclusion of this testimony could not have been prejudicial to the defendant.

In special ground 19, it is contended that the court erred in refusing to allow Freeman to answer the following question on cross-examination, "Isn't one of your clients you represent interested in the custody of this car?" Freeman had previously testified that he was employed by insurance companies in an association known as the National Automobile Theft Bureau. The fact that one of his employers had insured the automobile in question against theft was irrelevant, as ruled in the first division of this opinion, and evidence as to such fact would have been prejudicial to the plaintiff. The trial judge did not abuse his discretion in limiting the cross-examination to matters relevant to the issue in the case. See *City Bank of Macon* v. *Kent,* 57 *Ga.* 283 (16); *Styles* v. *State,* 176 *Ga.* 637 (3) (168 S. E. 887); *Huell* v. *Southeastern Stages Inc.,* 78 *Ga. App.* 311, 320 (7) (50 S. E. 2d, 745).

These same rulings apply to ground 22, in which it is contended that the court erred in refusing to allow H. L. Smith, a witness for the plaintiff on cross-examination by the defendant, to answer the question, "Do you know who your client was in this particular case?" Smith had previously testified that he was employed as an adjuster by a company which worked for insurance companies, which was sufficient to show his interest as a witness. Nor was it error to refuse to allow Smith to state whether he had settled the claim for the car, which he had been investigating, for $1600, as contended in special ground 23.

Ground 20 complains that the court erred in refusing to allow George Barrett, a witness for the plaintiff on cross-examination by the defendant, to answer the following question, "Did you find some cars stolen by Roberts at Evans Motor Company?" It is contended that the affirmative answer which Barrett would have given would have shown that Callahan, a former employee of Evans Motor Company, had purchased stolen cars from Roberts at the Evans lot as well as at the defendant's lot. The witness had already testified that he had found close to $60,000 worth of stolen cars through R. S. Evans, and that the cars were alleged to have been stolen by Jesse James Roberts. The exclusion of this evidence was not harmful error. *Cox* v. *Norris*, 70 *Ga. App.* 580, 581 (4) (28 S. E. 2d, 888) ; *Sims* v. *State*, 177 *Ga.* 266, 271 (170 S. E. 58).

Grounds 18, 19, 20, 22, and 23 fail to show that the movant's right to cross-examine the witnesses testifying for the plaintiff was abridged by the trial judge, who exercised his discretion in limiting the scope of such cross-examination.

■ Special ground 21 complains of the court's overruling an objection to a hypothetical question asked by the plaintiff of H. L. Smith with regard to the market value of an automobile. The objection was that the question was not based upon facts previously proved. While it is true that the question assumed the existence of certain accessories on the car, such as seat covers, hood ornament, fender guards, etc., this omission was corrected by the subsequent introduction of the bill of sale to the county, in which the car was described as having these accessories. Furthermore, J. F. Lee had already testified that the car was in perfect condition. This error was not prejudicial to the defendant.

■ Ground 24 complains of the exclusion of the agreement between J. F. Lee and an insurance company, acknowledging receipt by Lee of $1600 "as a loan or advance or account of my [Lee's] pending claim," and reciting that it was understood that such payment was not to change the status of the title to the automobile and was not intended to affect Lee's right to assert his claim to the automobile. The instrument recited that the $1600 was to be deposited with the county as required security for the automobile, and it was signed solely by Lee, with

nothing showing that he was not acting in his own personal right. This evidence was properly excluded for the reasons stated in the first division of this opinion.

■ Special grounds 25 and 26 assign error upon certain portions of the charge of the court to the jury with respect to the plaintiff's title or right of possession, as being necessary to maintain a suit in trover. While the movant contends that the jury would have been authorized to find that either J. F. Lee, the former county commissioner, or an insurance company had title to the automobile at the time the suit was brought, the undisputed evidence showed that the interest of the insurance company was only that of an equitable assignee, as ruled in the first division of this opinion, and that Lee was in possession of the county's automobile as an officer of the county, whereby his possession was the county's, as held in *Lee* v. *Hamilton*, 83 *Ga. App.* 59 (supra). These grounds of the motion are without merit.

■ Special ground 27 assigns error upon the following portion of the charge with respect to the relation existing between the defendant and C. A. Callahan, who had bought the car in question from Jesse James Roberts: "If you find from the evidence from this case that Mr. Callahan, at the time of the transaction involved, was working at the defendant's used car lot under an arrangement whereby he did not own, or have any interest in, any of the automobiles acquired for resale except that of sharing in the profits realized; that he made no financial contribution to the working capital stock used in the business and that he had no right to draw on, or to control as owner, the profits realized but had, on the other hand, merely a common interest in the profits— that is, interested in the profits in common with Mr. Hamilton to the extent that rather than having a stipulated amount of wages for his services, the increase or decrease in the profits measured the amount of compensation he received for his services—then I charge you, gentlemen, that the relationship between Mr. Hamilton and Mr. Callahan was not that of principal and independent contractor or partner but was that of employer and employee or master and servant, and any action on the part of Mr. Callahan while acting within the scope of his employment would be attributable to the defendant, Mr. Hamilton.

"On the other hand, if you find that the arrangement between Mr. Callahan and Mr. Hamilton was one by which Hamilton advanced money to Callahan for Callahan to use in buying cars for himself, and that Hamilton exercised no control over Callahan, and Hamilton was not to share in any of the losses, if there should have been losses, from the transactions between the parties, then the relation between the parties would not be a relation of employer and employee and Hamilton would not be bound by the acts of Callahan even though Hamilton shared in the profits in the proposition."

It is contended that this charge was erroneous as an abstract principle of law and because it failed to point out the undisputed fact that Callahan paid rent to the defendant for the space which he used on the defendant's lot. The evidence showed that, for each car sold by Callahan, he was required to pay $40 to the defendant, apparently without regard to the period of time the car had been on the lot. This sum was paid only for the space occupied by a car which happened to be sold, and the men on the lot were free to sell any of the cars; therefore, the sum thus paid was not for any definite part of the lot. Whether or not this sum was rent was a conclusion for the jury's determination under the evidence; and if the defendant wished to have the court give detailed instructions on this issue, he should have submitted a proper request therefor. The charge complained of was not erroneous for the reason assigned.

In special ground 28, error is assigned upon the charge of the court to the jury to the effect that, if the defendant retained the right to direct or control the time or manner of executing the work of Callahan and had the right to discharge him and to terminate at any time the arrangement between them, their relationship would be that of employer and employee or that of master and servant; but that, if the defendant did not have these rights, then the relationship between him and Callahan would be another relationship, "such as the relationship of independent contractor and principal." It is contended that the fact that the defendant could discharge Callahan or terminate the relationship between them was an erroneous test of whether or not the relationship between the parties was that of independent contractors or one of agency or employment.

Code § 66-101 provides in part that "An indefinite hiring may be terminated at will by either party." Code § 4-214 provides in part that "Generally, an agency is revocable at the will of the principal." On the other hand, one dealing with an independent contractor has the right merely to require certain definite results in conformity to the contract. *Blakely v. U. S. Fidelity & Guaranty Co.*, 67 *Ga. App.* 795 (21 S. E. 2d, 339); *Blair v. Smith*, 201 *Ga.* 747 (41 S. E. 2d, 133). The trial judge did not err in giving the charge complained of in this ground of the motion.

▮ The movant makes two contentions in his argument with respect to the general grounds of the motion for a new trial: (1) there was no evidence of a conversion by the defendant; and (2) there was no evidence of the market value of the automobile at the time of the alleged conversion. "The fact that possession of stolen property, unlawful as against the true owner, may have been acquired in good faith will not prevent such possession from operating as a conversion against the true owner." *Sappington v. Rimes*, 21 *Ga. App.* 810 (1) (95 S. E. 316). It was undisputed that the automobile in question was stolen from the possession of the plaintiff on or about May 1, 1948. As to the transaction through which the car came upon Hamilton's used-car lot, Callahan testified as follows: "I believe in the latter part of May or early June, 1948, there came on that lot a 1947 Chevrolet automobile, a sport sedan, identified by that ownership transfer certificate. If I'm not mistaken, I believe it was the car that this man Smith [also known as Jesse James Roberts] traded me for a car that was on the lot. That automobile came in as a trade. In other words, he wanted a particular unit we had on the lot there and wanted to trade on that particular car. He just came to the lot himself with the car he wanted to trade, and he indicated to me the one on the lot that he wanted to trade for. He said he wanted that particular unit. I did not buy the car that he wanted to trade for; it belonged to the stock of cars on the lot Mr. Hamilton had there. I worked out a trade with him. I had seen this man some several months prior to this. I did not know actually what his activities were. I worked out a trade for this car and took this car in question in this case in trade for it; I believe

that's correct. The car I took from R. B. Smith was put on the lot for sale. He paid me, I believe, $150, to the best of my recollection, between the car he traded and the car I turned over to him, and I turned that $150 in to the office, I believe, to Mr. Hamilton. I got no part of that money at that time."

Callahan further testified: "This particular car was on the lot for sale and remained there for some length of time. Anyone on the lot could sell it. It wasn't sold. It remained on the lot, I would say, for—I don't know, a couple of weeks or so or a week or ten days and hadn't been sold." He also testified: "Any cars while I was down there on Mr. Hamilton's lot where the trade was handled personally by me were bought with Mr. Hamilton's money, and I was trading and buying and selling on the lot. When I said I traded for the car myself, I was laboring under the impression I was trading it for the stock of cars for the lot."

From Hamilton's testimony, it appeared that he held the lease on the used-car lot, and operated it under his own license and in his own name; that he furnished Callahan $15,000 by leaving checks for Callahan signed in blank, but that these funds were for Callahan to use in purchasing cars only and not for him to use for any other purpose. When asked whether he couldn't terminate the arrangement with Callahan and the other men on the lot at any time he wanted to, Hamilton replied, "Well, it would require a liquidation of whatever stock we had." Hamilton did not deny that the car which had been traded to Jesse James Roberts or Smith by Callahan belonged to him. From this and other testimony, the jury was authorized to find that Callahan was the agent of Hamilton, entrusted with Hamilton's property and funds, for the purpose of carrying on the used-car business on Hamilton's lot; and that Callahan was compensated for the personal services rendered to Hamilton by one-half of the gross profit on the sale of each car, less $40 per car sold, which was to be applied on the overhead of the lot operation. Callahan's possession was that of his principal, and the jury was therefore authorized to find a conversion of the automobile by Hamilton, the defendant.

Furthermore, it appeared that, at the time the city detective and the insurance investigator came to the lot to check the

number of the car in question, it was in the possession of one Rogers, admittedly an employee of the defendant, and that when he was notified to bring the car to the lot he did so. It was not shown that Rogers had the car as his own at that time, although there was evidence that he later purchased the stolen automobile.

As to the market value of the stolen automobile, Callahan testified that he didn't remember the exact price which had been fixed upon the car in question, in making the trade, but that the market price on those cars at that time was between $1600 and $1700. This testimony was elicited on cross-examination by the defendant. On redirect examination, Callahan testified that the figure he had stated was the wholesale value. On recross-examination, he testified that he had given the fair market value of the particular car in question in June, 1948, as $1600 or $1700. There was other evidence as to a higher market value for the car on May 1, 1948, when it was stolen, and it did not appear that the condition of the car had changed from that time until it came into the defendant's possession a month later. There was also evidence of the hire of such an automobile, and there is no contention that the verdict was excessive. As there was evidence of a conversion by the defendant and of the market value of the property at the time of the conversion, the verdict was supported by the evidence; and, there being no error shown by the special grounds of the motion for a new trial, the court did not err in overruling the motion.

*Judgment affirmed. Felton and Worrill, JJ., concur.*