## HARRELL v. THE STATE.

1. The offense of arson is not so much against the property interest in the house as it is against the security of the house, and an allegation of ownership in an indictment is sustained by proof of occupancy by the alleged owner under a claim of right. There was no error in admitting the evidence complained of, to establish the ownership of the burned building.
2. While it is competent to show any relevant fact indicating that a witness is testifying as he does because of inducements influencing him to favor one of the parties to a case, it is not competent to establish that fact by proof of an appeal for clemency made by the prosecuting attorney in his argument to the jury in another case in which the witness whose credit is sought to be attacked was the defendant.
3. The evidence established a conspiracy between the accomplice and the accused, and the acts of the accomplice pending the criminal enterprise were admissible against the defendant.
4. In a case of felony, where the evidence relied on for a conviction is that of an accomplice and circumstances corroborating his testimony, it is not error to charge that the corroborating circumstances, independently of the accomplice's testimony, should be such as lead to the inference of the defendant's guilt, and that grave suspicions raised by the circumstances would not be a sufficient corroboration of the accomplice's testimony to authorize a conviction.
5. A defendant is entitled to a concrete application of the law to the particular facts of a case, if he presents a timely written request to charge, but he is not entitled to an elaboration of the abstract law upon a single phase of the case to such an extent as will give to it undue prominence.
6. There was sufficient evidence to warrant the verdict, which has the approval of the trial judge.

Argued January 18, - Decided January 26, 1905.

Indictment for arson. Before Judge Littlejohn. Webster superior court. November 25, 1904.

*Blalock & Cobb, G. Y. Harrell,* and *J. W. Walters,* for plaintiff in error. *F. A. Hooper, solicitor-general, J. B. Hudson, S. P. Gilbert, S. R. Stevens,* and *J. F. Souter,* contra.

EVANS, J. H. B. Morgan and A. S. Harrell were jointly indicted for the offense of arson, at the April term, 1904, of Webster superior court. The defendant Morgan was tried at that term and convicted, and on review of the case by this court his conviction was upheld. See 120 *Ga.* 499. At the next term of the court, Harrell was put on trial and was convicted under the first count in the indictment, charging him with being a joint principal. On this trial Morgan was offered as a witness for the

State, and his testimony was to the effect that Harrell was the actual perpetrator of the crime. There was other testimony tending to connect him therewith. To the overruling of his motion for a new trial he excepts.

1. The 1st ground of the amended motion was abandoned. The 2d, 3d, 4th, and 5th grounds relate to the admission of evidence touching the ownership of the building described in the indictment, which was therein alleged to be the "frame storehouse of J. R. Stapleton, who then and there owned and occupied [the same] as trustee in bankruptcy of the corporation of Stapleton and Nicholson Company." The court allowed J. R. Stapleton to testify that he was, at the time of the fire, in possession of this storehouse as trustee in bankruptcy of the Stapleton and Nicholson Company, which was a chartered company. The court then admitted a certificate of the referee in bankruptcy, that Stapleton had been appointed trustee of the bankrupt corporation, and also the judgment adjudicating that company a bankrupt, signed by the referee. In cases of arson, the offense is not so much against the property interest in the house as it is against the security of the house, and an allegation of ownership in an indictment is sustained by proof of the occupancy of the alleged owner under a claim of right. Even if it was error to allow the witness to testify that his possession was that of a trustee in bankruptcy, the error was cured by the subsequent admission of the certificate of his appointment as trustee by the referee in bankruptcy. This certificate was admissible to prove that fact. *Morgan* v. *State,* 120 *Ga.* 502. The adjudication of bankruptcy was not necessary to establish the appointment of the trustee by the referee, the regularity of such appointment not being in issue, and the presumption being that there had previously been a proper adjudication of bankruptcy.

2. It appears that one Bill Ellis Sheppard had been tried at the same term of court for the crime of murder; that the same counsel who was conducting the State's case against Harrell was employed in the prosecution of Sheppard, and that this attorney, in his argument to the jury in the Sheppard case, appealed to the jury to recommend a sentence of life imprisonment, in the event they should find him guilty. The accused offered to prove these facts for the purpose of showing that Sheppard, who testified as a wit-

ness for the State in the present case, was induced by the appeal for leniency made by the prosecuting attorney in his case to give testimony favorable to the State in its prosecution of Harrell. The court very properly rejected this proffered evidence. While it is competent to show any relevant fact indicating that a witness is testifying as he does because of inducements influencing him to favor one of the parties to a case, it is certainly not competent to establish that fact by the declarations of a prosecuting attorney made during the trial of another case in which the witness was interested. What counsel said to the jury in the Sheppard case did not amount to an inducement held out to him to swear falsely in the present case. It was res inter alios acta. The testimony rejected was not such as would have justified the jury in discrediting the testimony of Sheppard on the theory that, in testifying as he did, he was undertaking to pay a debt of gratitude which he thought he owed to the prosecuting attorney for the manner in which he had conducted the prosecution against him, the witness. He had been convicted and was paying the penalty of his crime; and, for aught that appears, he had nothing to gain or to lose by swearing to what he knew concerning the commission of the crime then under investigation.

3. Exception is taken to the refusal of the court to rule out the testimony of one Jim Jordan, as to what Morgan did with reference to procuring a bottle of oil from one Ollie Jordan. The motion to rule out this testimony was put upon the ground that proof of the acts of Morgan was inadmissible until after the alleged conspiracy between him and the accused was shown. When this testimony was first brought out no objection to it was made, and the motion to rule it out was presented after the State had introduced all of its direct evidence. At the time the motion was made there was evidence tending to establish the alleged conspiracy, and therefore the court rightly declined to sustain the motion.

4. Complaint is made of the following charge of the court: "Now, in that respect, gentlemen, I charge you that the corroborating circumstances must be such as to satisfy the jury, and it should be such as, independent of the accomplice's testimony, to lead to the inference that the defendant is guilty; it must be such as, independently of the accomplice's testimony, to lead to the

inference that the defendant is guilty. And grave suspicions raised by the circumstances would not, under the law, be a sufficient corroboration of the testimony of the accomplice to authorize a conviction." The contention is that this charge was misleading and calculated to confuse the minds of the jury, and was an incorrect statement of the law. There can not lawfully be a conviction of a felony where the only witness is an accomplice, unless his testimony is aided by proof of corroborating circumstances. Penal Code, § 991. But "it is not essential that the corroborating testimony shall in and of itself be sufficient to warrant a verdict of guilty, or that the testimony of the accomplice shall be corroborated in every material particular." *Dixon* v. *State*, 116 *Ga.* 186 (7). The charge of the court to which exception is taken was a correct statement of the law with reference to the sufficiency of the corroboration of an accomplice. If the aliunde evidence be such as to lead to the inference that the accused is guilty, it will be sufficient. The judge expressly cautioned the jury that grave suspicion raised by the circumstances would not be sufficient to corroborate the testimony of the accomplice, but the corroborating circumstances should and must be of a character which, independently of his testimony, lead to the inference of the defendant's guilt. This was a clear statement of the law on the subject, and the charge is not open to the objections urged against it.

5. Twelve written requests were presented to the judge, invoking instructions on the subject of reasonable doubt and the probative force of circumstantial evidence. None of these requests contained a concrete application of the law to the particular facts of the case on trial, but set forth a mere abstract statement as to what would or would not raise a reasonable doubt in cases where the State relied for a conviction on circumstantial evidence. The charge of the court is set forth in full in the record, and an examination of the same discloses that the judge gave an exhaustive instruction to the jury as to the law bearing on reasonable doubt and as to the degree and strength of the circumstantial evidence required to authorize a conviction. It has been held, that, "In a close and doubtful case, it is error for the judge to refuse to give to the jury, upon an appropriate written request submitted in due time, a charge applying to the facts, as shown by the evidence for

the party making the request, the law applicable thereto;" and that, in such a case, the error is one which requires the grant of a new trial, "although the judge in his charge states the abstract principle of law applicable to those facts." *Roberts* v. *State*, 114 *Ga.* 450. But even conceding that each of the written requests embodied a correct statement of the abstract law as heretofore announced by this court, the trial judge properly declined to give them in charge; for to have done so would have been to unduly stress this feature or phase of the case. A defendant is entitled to a concrete application of the law to the peculiar facts of the case, if he presents a timely written request to charge; but he is not entitled to an elaboration of the abstract law upon a single phase of the case to such an extent as will give to it undue prominence. The court having fully charged the law upon the subjects covered by the requests to charge, it was not error to refuse to give them in charge.

6. There was abundant evidence to establish the fact that the crime charged in the indictment had been committed by some one, the fire evidently having been of incendiary origin. It is contended, however, that the verdict was contrary to the evidence, in that there were no corroborating circumstances shown connecting the accused with the perpetration of that offense. The record discloses that Morgan, the alleged accomplice, was a relative and boon companion of Harrell; that for many months prior to the commission of the crime they had been on unusually intimate terms, had led a more or less intemperate and dissipated life, and were frequently seen together. One entire side of the town of Preston was burned. One of the storehouses was owned by a corporation in which a relative of Harrell had an interest; but whatever this interest was, it had been lost because of the insolvency of the corporation. The mercantile firm of Cobb & Montgomery occupied a store in the burned district. This firm, a short time before the fire, had caused a levy to be made on property belonging to the defendant's father, and the defendant had expressed resentment towards the members of that firm for causing the levy to be made. A few days before the fire, the accused procured a warrant to be issued against a nephew of Mr. Nicholson, a stockholder of the Stapleton and Nicholson Company. The defendant said to a witness, who was discussing the proposed prosecution of

Nicholson's nephew, that if the witness had come to intercede for the young man at the instance of Nicholson, he would not entertain the idea of abandoning the prosecution, because "Nicholson hadn't treated him right." "Harrell seemed to be fretted with" Nicholson, and "used some rough language in connection with" this statement, expressing at the same time his suspicion that Nicholson had sent the witness to him in order to persuade him to withdraw the warrant. The defendant "seemed to be mad" because of Nicholson's attempt to thus shield his nephew, as he supposed, and told the witness about "some trouble that his father and Nicholson had about some property. . that Nicholson had sold them," saying "he wouldn't show him any favors unless he would whack up with them about a piece of property that had been sold to them" in the town of Preston. Defendant went so far as to say that, were it not for the witness, "he would be glad to see the town burned, or sunk, or something of that kind." Just before dark on the night of the fire, the defendant and Morgan left the town of Preston in the former's buggy, and drove to his house, where they took supper. Morgan was drunk. Defendant left his house with Morgan immediately after supper, but returned about eleven o'clock that night, and was not again seen at home until the next morning about daylight. There was then clearly visible on his forehead a red mark, such as might have been made by the band of a hat pulled tightly down upon his head and worn so for some time, from which fact one of the witnesses who swore he was at the house said he had inferred that the defendant had but recently returned home. The morning of the fire, defendant was seen about eight o'clock in Preston, in the near vicinity of the burned district, sitting in his buggy; yet, two hours later, when told by an acquaintance whom he met on the road some distance from Preston that there had been a fire in the town, the defendant affected surprise at this information and expressed his regret that the town had been burned. It also appeared that Morgan was arrested the day after the fire, and that, after his arrest, the defendant said to Morgan's wife: "I am expecting them after me every minute." He further told her that if she "knew anything, to keep it to [herself]; it was always best." The State introduced further testimony tending to establish its contention that the accused, in company with Morgan, went to the plantation of the

defendant's father, about eleven o'clock on the morning of the day before the fire occurred, and that they sought to procure a negro living on the plantation to burn the town, but he refused to do so; whereupon Morgan said, " If you are afraid to burn up Preston, by God! I aint," and " Harrell laughed at that," and went off with Morgan in his buggy, driving towards Preston.

The accused admitted having been away from his home during the night of the fire and not returning with his horse and. buggy until daylight, but attempted to establish an alibi by showing he had not driven to Preston but in another direction to the house of a relative, where he had stayed until early in the morning. According to the defendant's statement and the testimony of the witnesses he offered to establish this alibi, all of whom were relatives, he left home after supper with Morgan, but returned alone about eleven o'clock; then, remembering that a relative who owed him some money for cottonseed contemplated moving to another county, he drove to the house of this relative, some six miles distant, where he sat up the remainder of the night talking with his kinsman in a room wherein his relative's wife, recently confined, was lying in bed. Notwithstanding his express purpose was, he said, to collect a debt, one of the witnesses testifying in his behalf swore that he made no demand on his relative for the money. After sitting up the remainder of the night, as stated, the defendant declined to take breakfast at his relative's house, and, according to his statement, left in his buggy shortly before daylight, arriving at his home about sunup. The account given by the defendant as to his movements and whereabouts after leaving his home at eleven o'clock at night, on the errand stated, was a most improbable story, viewed in the light of the circumstances brought to light by the evidence introduced by the State, viz., his expression of a wish to see the town of Preston burned or sunk, were it not for a single person towards whom he felt friendly and whom he did not desire to injure; his attempt to procure a negro on the plantation of his father to burn the town by setting fire to the building in which the fire originated; his close association with Morgan, who had been jointly indicted with him for the crime and who had been found guilty, and who testified that the defendant was the actual perpetrator of the offense with which they had been charged; the defendant's

feigned ignorance of the occurrence after he had driven to town early in the morning and had viewed the burned district; his ill feelings towards at least three of the property owners who had suffered by the fire, and his indifference for others for whom he felt no friendship; and, lastly, his cherishing of a grievance against the town because of a general dislike for its inhabitants, who he asserted had shown him no consideration or regard. These and other circumstances, such as the remarks he made to Mrs. Morgan indicating that he had reason to apprehend his arrest, were sufficient to connect him with the commission of the crime, irrespective of Morgan's testimony.    It was not necessary that the testimony of Morgan, his alleged accomplice, should be corroborated in every material particular.    The corroboration which the law requires is that the circumstances shall, independently of the testimony of an accomplice, connect the accused with the perpetration of the offense charged.    The testimony relied on by the State met this requirement of the law.    The verdict of the jury has the approval of the presiding judge, and no reason is shown why it should be set aside.

Judgment affirmed.    All the Justices concur.