## 6136. BALDWIN v. THE STATE.

The evidence relied upon to sustain the conviction of the accused, outside of the testimony of the alleged accomplice, was wholly circumstantial and was not enough in itself to directly connect the accused with the commission of the crime.

DECIDED MARCH 30, 1915.

Indictment for burglary; from Bibb superior court—Judge Mathews. October 3, 1914.

*Napier, Maynard & Plunkett, W. A. McClellan,* for plaintiff in error.

*John P. Ross, solicitor-general,* contra.

WADE, J. The house of Arthur Walton, in the country, was feloniously entered through a fastened window while he and his wife were away in the fields and the house was unoccupied, and a hat, a shirt, a pair of women's shoes, a razor, and six sacks of smoking tobacco of a brand in general use, were stolen and removed therefrom. No one witnessed the occurrence and it does not appear that there were any tracks or other circumstances about the house to indicate who or how many people committed the crime. Walton's wife returned from the field and discovered that the house had been entered; she summoned her husband, who thereupon took his shotgun and proceeded along the railroad in the direction of a near-by station and hamlet, where he found three negroes and a white man, all seated together in a little shed-room belonging to the railroad company. On his approach the white man fled towards the adjacent river swamp, and later was apprehended. One of the negroes attempted to flee, but halted and surrendered when Walton fired his gun in the air to intimidate him and called upon him to stop. The other two—Baldwin (the plaintiff in error) and Moore —made no effort to escape, though they began walking off when Walton approached. Walton called upon Davis, who kept a store near by, to take charge of Moore and Baldwin until he caught Williams, the negro who ran, and neither Moore nor Baldwin made any attempt to get away from Davis, though Davis was not armed. When Walton approached, Baldwin and Moore each had a sack of "Bull Durham" tobacco, the brand of tobacco stolen from his house, but he was unable to identify it as tobacco he had lost. Each had apparently made four or five cigarettes out of the tobacco when arrested by Walton. The three negroes and the white man were

placed in custody, and at the trial of the plaintiff in error the white man, George Knight, who had previously pleaded guilty, testified, that the robbery was the work of himself and these three negroes; that Williams, Moore, and Baldwin entered the house through a window, after breaking the fastening which secured its shutter, and that he remained outside, and later a division of the spoils was made—the hat was given to him, Williams retained the razor and some other things, and Moore and Baldwin received some of the stolen sacks of tobacco. There was evidence that Baldwin had previously borne a reputation for industry and honesty, and had been regularly employed for several years by a manufacturing concern in Macon. He explained his presence at the place where he was arrested by asserting that he was seeking employment from a certain company engaged in extensive construction work in that neighborhood, which would pay him better wages than he had been earning, and that he had only casually encountered the other defendants and knew nothing of the crime. The next morning after the arrest the stolen razor was found in a little box or crate, in which chickens had been shipped and upon which, it was testified, "one of these boys" was sitting while under the shed at the railroad station; and some tobacco of the kind and brand stolen from Walton was also found at that time underneath certain planks upon which "one of the boys" had been then seated, but it does not appear whether the razor was found where Moore or where Baldwin had been seated, nor does it appear, except by conjecture or possible inference, that either Moore or Baldwin placed the razor or the tobacco where they were discovered.

The plaintiff in error was arrested while in the company of a self-confessed burglar, near a railroad station in the country, while making no effort to conceal himself, and the testimony of his alleged accomplice implicated him in the commission of the crime; but it was not shown that he had on his person or in his possession any of the articles identified as stolen, nor was it shown by the testimony of any person other than the accomplice that he had been near the scene of the crime; he yielded to arrest quietly and made no effort to escape, notwithstanding that the man guarding him was not an officer and was unarmed, and his previous character for industry and honesty corroborated his rational explanation of his presence in the locality where he was when arrested. It is true that

a partially used bag of smoking tobacco of the same brand as that stolen appears, from the testimony of one witness, to have been in his possession at the time he was arrested; but this tobacco was not identified as a part of that which had been stolen, and it does not appear that the brand was unusual and not one commonly in use. Also, the next morning after the arrest, some smoking tobacco like that stolen and the stolen razor were found under a box and some planks on which the defendants had been seated, but it does not appear which of the defendants was seated where the razor was found, and the tobacco then found was not identified as a part of that which had been stolen. There was evidence that one of the three negroes arrested had on the pair of shoes which had been stolen, but the evidence does not disclose that Baldwin was the one wearing the shoes, but rather points to one of the other defendants. From all the above, it does not appear that outside of the evidence of the accomplice there was any evidence which directly connected Baldwin with the commission of the crime, though the facts shown were extremely suspicious, and possibly the defendant may be guilty. Applying, however, the strict rule so often announced by our Supreme Court and this court, we feel compelled to hold that the court erred in overruling the motion of the defendant for a new trial.

While it is not essential that the testimony in corroboration of an accomplice shall of itself be sufficient to warrant a verdict of guilty (*Partee* v. *State, 67 Ga.* 570, 571), or that the testimony of the accomplice shall be corroborated in every material particular (*Bishop* v. *State, 9 Ga. App.* 205, 70 S. E. 976; *Dixon* v. *State,* 116 *Ga.* 186, 42 S. E. 357), nothing is better settled, under the decisions of the Supreme Court and of this court, than that the corroborative testimony shall be of itself sufficient to raise an inference that the defendant is guilty. Corroborating circumstances must be such as independently of the testimony of the accomplice would lead to the inference of the guilt of the accused, and must in some way connect the defendant with the criminal act. *Bishop* v. *State,* supra; *Smith* v. *State, 7 Ga. App.* 781, 783 (68 S. E. 335); *Childers* v. *State, 52 Ga.* 106; *McCalla* v. *State, 66 Ga.* 346; *Taylor* v. *State,* 110 *Ga.* 154 (35 S. E. 161); *McCrory* v. *State,* 101 *Ga.* 779 (28 S. E. 921). While it is true that the sufficiency of circumstances offered for the purpose of corroboration is a matter for de-

termination by the jury (*Dixon* v. *State,* 7 *Ga. App.* 604, 67 S. E. 696), and the law can not lay down a rule to measure the extent of corroboration necessary, still, where the only witness in a felony case is confessedly an accomplice, the corroborating circumstances are not sufficient to dispense with another witness, unless they are such as to connect the defendant with the crime. It is not sufficient for a witness to corroborate as to the time, place, and circumstances of a transaction, if there is nothing except the statement of the accomplice to show any connection of the prisoners therewith" (*Smith* v. *State,* supra); and facts which merely place upon the defendant a grave suspicion of guilt are not sufficient. *Taylor* v. *State,* supra; *Harrell* v. *State,* 121 *Ga.* 607 (49 S. E. 703); though slight evidence that the crime was committed by the defendant, and also identifying him with it, will corroborate the testimony of his accomplice and warrant a finding of guilty. *Partee* v. *State,* supra; *Roberts* v. *State,* 55 *Ga.* 220; *Evans* v. *State,* 78 *Ga.* 351.

While it is the province of the jury to determine whether the circumstances shown by outside evidence are sufficient to corroborate the testimony of a confessed accomplice, the jury may not be allowed to attach undue and unreasonable weight and importance to slight or trivial circumstances, sufficient perhaps to produce a strong suspicion of guilt, and thereby *create* a connection between the accused and the commission of the crime, where it is not otherwise established to the satisfaction of the rational mind. So where, as in this case, it appears to a reviewing court that the only circumstances relied upon to connect the defendant with the crime are wholly insufficient of themselves to create more than a suspicion of guilt, the verdict depending upon such circumstances can not be allowed to stand. While this court is properly without power to interfere with the findings of juries on questions of fact, yet one of the fundamental reasons for its existence is that it may determine if the evidence produced against any person charged with the commission of a crime is legally sufficient to warrant the inference drawn by the jury as to the guilt of the defendant. If a jury had the absolute power to determine the legal sufficiency of any kind of evidence to establish the guilt of those accused of crime, without check or hindrance, and without the opportunity for review in a forum presumably removed from the possible influence of local im-

pulses or feeling, bias or prejudice, which may often to some degree unconsciously affect even the most scrupulous and careful jurors, one charged with a crime particularly offensive to the spirit of the community where he happens to be tried, or so terrible in its nature as to cry aloud to every law-abiding citizen for the infliction of the severest penalties upon the perpetrator, might be swept onward to ruin by "trifles light as air," which in the reflective calm following the storm of impulse may be found to have been wholly insufficient to connect the defendant with the crime for which he has been sacrificed upon the altar of a wrathful though mistaken Nemesis. While circumstances may to some extent be sufficient to corroborate an accomplice, still if they fail to connect the accused with the crime by a thread of evidence of even cobweb fineness, or if a single link be missing from the chain of facts that may be wound about him, no matter how grave the suspicion created against him, he must be accounted innocent and liberated from the toils of the law, since only by a *complete* chain of evidence, or by an *unbroken* thread of testimony connecting him with the crime, can the presumption of innocence with which he enters upon his trial be finally removed. Also, whether offered as the sole proof of guilt, or in corroboration of an accomplice, the general rule applies that where circumstantial evidence alone is relied upon, it must be sufficient to satisfy the jury of the guilt of the accused to the exclusion of every other reasonable supposition.

Except as indicated above, there is no such substantial merit in any of the assignments of error as would make it necessary to discuss or specifically refer to them.          *Judgment reversed.*

BROYLES, J., dissenting. Slight evidence corroborating the testimony of an accomplice may be sufficient to authorize a jury in finding the accused guilty; and under the decisions of this court and of the Supreme Court, the sufficiency or weight of corroborating evidence is a question solely for the jury, and when they find that it is sufficient, and the trial judge approves their finding, a reviewing court will not interfere with the discretion of the trial judge in refusing a new trial, unless it has been manifestly abused. *Roberts* v. *State,* 55 *Ga.* 220; *Ransone* v. *Christian,* 56 *Ga.* 356; *Bell* v. *State,* 73 *Ga.* 572; *Evans* v. *State,* 78 *Ga.* 351; *Sikes* v. *State,* 105 *Ga.* 592 (3), 595 (31 S. E. 567); *Powers* v. *State,* 44 *Ga.* 210; *Chapman* v. *State,* 109 *Ga.* 164, 165 (34 S. E. 369); *Har-*

*grove* v. *State*, 125 *Ga.* 275 (54 S. E. 164) ; *Anglin* v. *State*, 14 *Ga. App.* 566 (81 S. E. 804). In this case, the jury having found that the corroborating evidence was sufficient, and their verdict having been approved by the trial judge, and no error of law having been committed by him, I think that his judgment overruling the motion for a new trial should be affirmed.