### 24811. ABERNATHY v. THE STATE.

DECIDED JUNE 27, 1935.

*Thomas H. Crawford, William Bull,* for plaintiff in error.

*H. G. Vandiviere, solicitor-general,* contra.

MacIntyre, J. The indictment charges that on September 20, 1934, in Fannin county, Georgia, Raymond Abernathy committed the crime of murder by shooting Frank Mahaffey with a pistol. A jury found the defendant guilty of voluntary manslaughter, and the exception is to the judgment overruling the defendant's motion for a new trial. The special grounds of the motion present two controlling questions: (1) Did the evidence and the prisoner's statement, separately or together, warrant the charge on mutual combat? (2) Did the evidence and the prisoner's statement, separately or together, warrant the charge on voluntary manslaughter?

It appears from the record that, on the night of September 20, 1934, near a church, and in Fannin county, Georgia, the deceased was shot with a pistol, the ball striking him a little below the nipple of the left breast, "coming out just above the belt line," and causing his death. Without undertaking to set out the transaction in detail, we shall consider that part of the evidence and the defendant's statement which bears most directly upon the questions at issue. Trammell Carroll, sworn for the State, testified that the defendant and the deceased left the churchyard, saying that they were going to get some liquor, and that shortly thereafter they had liquor, and "the whole bunch took a drink;" that shortly thereafter the defendant took out his gun and told Frank Mahaffey he would shoot him, and then said, no, he was "just joking;" that the defendant then put his pistol in his pocket and "tapped" the deceased on the head with a beer bottle, and the defendant and the deceased "went on up the road with their arms around each other;" that "about the time the gun was drawn," Mahaffey was boisterous and cursing, and witness thought he "did call somebody there a damned son of a bitch;" that shortly thereafter Clement, who was fighting with the deceased, ran away, saying the deceased "had a gun and was going to shoot;" that the deceased then hit at the defendant, with his fist, witness thought, and "they kinder backed off" about three feet from each other, and the pistol fired and the deceased fell; that the shot came from the direction of the defendant; and that the defendant said: "I didn't mean to shoot him, I just meant to scare him."

Dewey Clement, sworn for the defendant, testified that, on the

occasion of the first difficulty between the defendant and the deceased, the deceased, who appeared to be drunk, was cursing "all the boys." This witness further swore: "Just about the time the gun fired, the defendant . . was in a scuffle with Frank Mahaffey. I don't know who he was in a scuffle with at the time the gun fired, but just before the gun fired, it was Frank Mahaffey. . . They were just scuffling, and Frank was trying to raise his hands, and Raymond was trying to hold them down. Then, while that was going on, the gun fired. . . The deceased was drunk, . . just wanted to fight somebody. . . I turned Mahaffey loose, but stood there for a second. Mahaffey then was going towards Abernathy. . . He did not have a pistol in his hand, but he had a pistol after he got to Raymond. . . Raymond had one."

Lannus Brown, sworn for the defendant, testified that when he asked the crowd of five who shot the deceased, the defendant alone answered the question, by saying that he had not shot him; and after the shooting the witness took a "Colt's 380 pistol" out of the defendant's pocket, "because I didn't know what he would do," and that the defendant didn't much want him to have it.

The defendant stated to the jury that he and the deceased were on friendly terms; that they went to get some whisky; that the deceased was intoxicated and cursed a little and he told him to be quiet, but the deceased kept on cursing; that the deceased got defendant's pistol from his belt and pointed it at Clements and said he would shoot him; that defendant "grabbed hold of the gun to keep him from shooting him, and the gun went off;" that when the deceased fell the pistol was left in the defendant's hand; and that "it was just an accident."

"There need not be mutual blows to constitute a mutual combat. There must be a mutual intent to fight, and if this exists and but one blow be stricken, the mutual combat exists, even though the first blow kills or disables one of the parties." *Tate* v. *State*, 46 *Ga.* 148 (3). "It is well settled by repeated rulings of the Supreme Court and this court that on a trial for murder, if there is anything deducible from the evidence or the defendant's statement that would tend to show manslaughter, voluntary or involuntary, it is the duty of the court to instruct the jury fully on the law of [voluntary] manslaughter. *Crawford* v. *State*, 12 *Ga.* 142 (6); *Jackson* v. *State*, 76 *Ga.* 473; *Wayne* v. *State*, 56 *Ga.* 113;

*Bell* v. *State,* 130 *Ga.* 865 (61 S. E. 996); *Strickland* v. *State,* 133 *Ga.* 76 (65 S. E. 148); *Pyle* v. *State,* 4 *Ga. App.* 811 (62 S. E. 540)." *Cain* v. *State,* 7 *Ga. App.* 24 (65 S. E. 1069). The facts in *Drane* v. *State,* 147 *Ga.* 212 (93 S. E. 217), were very similar to those of the case at bar. In that case the court said: "There was other evidence from which the jury were authorized to find that the shooting was intentional. From the evidence the jury might have believed, had the question been submitted to them, that the accused was trying to take from the decedent a weapon with which the latter was about to commit a felonious assault upon a third person, and that the accused was justifiable in the attempt to take this weapon and in seizing it with his hands. And if he was justifiable in seizing it, and the decedent attempted to wrest it from the accused when the latter had it in his grasp for the purpose of preventing a felonious use of it, it would be a question for the jury, in considering the character of the struggle for the complete possession of the weapon, to determine whether or not the circumstances were such as to fall within that class referred to in the statute upon the subject of voluntary manslaughter as 'other equivalent circumstances,' and therefore were of the character to justify the excitement of passion and to exclude all idea of deliberation and malice."

We hold that there was both mutual combat and voluntary manslaughter in this case, and that the court did not err in charging the law applicable to those subjects. We also hold that the evidence supports the verdict, and that for no reason assigned did the court commit reversible error in overruling the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Guerry, J., concur.*