27665.   MOYERS *v.* THE STATE.

Decided October 17, 1939. Rehearing denied December 14, 1939.

*George G. Finch, Reuben A. Garland,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw, James A. Branch,* contra.

MacIntyre, J.  W. T. Moyers was convicted of robbery, filed a motion for new trial which was overruled and he excepted.

■ Special ground 1 assigns error on the ruling of the court sustaining an objection to the question of counsel for defendant on cross-examination of Mr. Glenn in which Mr. Glenn was asked, "If Moyers [defendant] had demanded a half-million dollars, would you have gone down and fixed that up and brought it to him?"  The contention is that the ruling of the court abridged the defendant's right to a thorough and sifting cross-examination; that "the question was material as affecting the credibility of the witness Glenn, and for the purpose of allowing the jury to determine whether the transaction was as contended for by the defendant, that is, that the witness Woodruff owed the defendant $30,000, and that the defendant [witness?] Glenn procured said sum only because he was instructed to do so by the witness Woodruff, and that had a larger amount been demanded by the defendant that the witness Glenn would have delivered said sum."  This court, in *Clackum* v. *State,* supra, said: "While it is recognized that it is the substantial right of one accused of crime to a thorough and sifting cross-examination of every witness that appears against him, and that this right should not be abridged, yet this right is not violated by the judge in ruling out a question on cross-examination, hypothetical in nature, assuming facts not in evidence, which would amount to aimless, useless, and purposeless examination, and would prove a waste of time of the court."  See also *Durham* v. *State,* 138 *Ga.* 817 (76 S. E. 351) ; *Styles* v. *State,* 176 *Ga.* 637 (3) (168 S. E. 887) ; *Granison* v. *State,* 49 *Ga. App.* 216 (174 S. E. 636) ; *Lewis* v. *State,* 90 *Ga.* 95 (15 S. E. 697) ; 70 C. J. 638, § 809. The court did not err in sustaining the objection.  The question was hypothetical in nature and assumed a fact not in evidence. The evidence here was of the theft of $30,000, not a half million.

■ Special ground 2 complains that the defendant's right to a thorough searching and sifting cross-examination of the State's witness Black was abridged by the court in failing and refusing

to permit counsel for the defendant to interrogate said witness as follows: "Do you know whether any demand was made on any insurance company for any alleged losses the bank is alleged to have sustained by reason of a robbery?" Further, that it was "highly relevant and necessary from the defendant's standpoint to prove his innocence, it being contended by the defendant that the money was obtained by him in full settlement of the claim he had against the witness, Woodruff, and the failure of the Trust Company of Georgia or of Glenn [its president] to have made demand on the insurance company for reimbursement is a circumstance which the jury might conclude corroborated the statement of the defendant."

Where an officer or agent of a bank is robbed of money in his actual lawful possession, as distinguished from mere custody, although the legal title is in the bank, the ownership may be laid in either the person having such actual lawful possession or in the bank, even though the bank had the legal title and the constructive possession. *Henley* v. *State,* 59 *Ga. App.* 595, 600 (2 S. E. 2d, 139); *Thomas* v. *State,* 27 *Ga. App.* 38 (2) (107 S. E. 418). Where the ownership of the money alleged in the indictment to have been taken in a robbery is in the person or agent having the actual legal possession, it is immaterial in the trial of the case whether the bank (even though it had the legal title) had any insurance against robbery or not, and even if the insured and the insurance company had already reimbursed the bank it would not change the character of the transaction, for, if the transaction amounted to robbery, it would still be robbery, even though the bank had been subsequently reimbursed by the insurance company. *O'Neal* v. *State,* 10 *Ga. App.* 474 (73 S. E. 696). On the other hand, if this question had been allowed by the court it would likely have opened up another issue as to whether the bondsman of the bank was liable, or whether, when Glenn obtained the money from the bank for Woodruff, the legal title had not passed out of the bank and into Woodruff, and thus have plunged the court into a collateral issue of the liability of the bonding company which was unnecessary in order to fairly determine the material issues in the case. We therefore do not think that the court improperly abridged the right of the defendant to a thorough and sifting cross-examination of a State's witness in refusing to allow him, for the first time, on cross-examination, to go into the question of whether a

bond had been given to cover losses in the event of a robbery, or if the bank had such a bond, whether Glenn, the president of the bank, had made a demand for reimbursement. Applying this "rule of relevancy" to the cross-examination, we think the ground is without merit. *Granison* v. *State,* 49 *Ga. App.* 216, 218 (174 S. E. 636).

■ After Mr. Finch, attorney for the defendant, had insisted upon asking the State's witness Black, "Do you know whether any demand was made on any insurance company for any alleged losses the bank is alleged to have sustained by reason of a robbery?" which we decided in the preceding division of this opinion was irrelevant, the following colloquy took place: Mr. Finch: "No. I say it is a circumstance the jury should consider." The court: "I don't think so. I think it is irrelevant." Mr. W. T. Moyers [defendant]: "Your Honor, the bank would not." . . The court: "I can not hear from you, Mr. Moyers." The defendant complains in special ground 3 that this deprived him of his constitutional right to defend himself, in that, after the court had sustained an objection to the question asked the witness Black on cross-examination as to whether or not any demand was made on the insurance company, it declined to hear from him (the defendant) on the objection. Code, § 2-104, declares: "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." See also *Gatlin* v. *State,* 17 *Ga. App.* 406 (87 S. E. 151) ; *Jones* v. *State,* 57 *Ga. App.* 344, 345 (195 S. E. 316). "In all cases in which more than one attorney is retained on either side, the examination and cross-examination shall be conducted by one of the counsel only; and at the opening of the case both parties shall state to the court to which attorney the examination and cross-examination of witnesses is confined." Code, §§ 24-3359, 24-3388. In the instant case, Mr. Finch was leading counsel and was conducting the cross-examination. Confusion and perplexity would necessarily arise if a cause were to be conducted at the same time both by counsel and by the party himself. If the defendant has counsel to conduct his cause, he may suggest any question to them which he considers fit to be put; or if he takes the conduct of it upon himself he may have the benefit of their private suggestions upon matters of fact, and as soon as any point of law arises they shall be readily heard upon it.

The trial court has the undoubted right to hold all trials to their proper and legitimate channels. It is not only his legal right, but his duty as well, to see that the court's business proceeds in an orderly and decorous manner. We are of the opinion that, as the defendant was represented by counsel (and we might add, able and experienced counsel), the trial court did not abuse its discretion in refusing to allow the defendant to also conduct the cross-examination of the witness. See *Roberts* v. *State,* 14 *Ga.* 18 (2); Rex *v.* White, 170 English Rpts., 1318; Leahy *v.* State, 111 Tex. Crim., 570 (13 S. W. (2d) 874); State *v.* Ingram, 316 Mo. 268 (289 S. W. 637 (2)).

■ Special ground 4 complains of the ruling of the court excluding certain testimony of Mr. Thomas Howell Scott to the effect that after the alleged robbery of Mr. Glenn by the defendant Moyers, Moyers paid Scott $15. The defendant contends that it was relevant because "If, they claim, he had robbed anybody of thirty thousand dollars, he would have absconded." This evidence was to the effect that the defendant did not flee or conceal himself after the commission of the crime, and was thus consistent with his innocence. The evidence was not admissible. In *Flannigan* v. *State,* 135 *Ga.* 221 (3) (69 S. E. 171), it was said: "The court did not err in excluding evidence offered for the purpose of showing that the accused did not flee after the homicide, although he had full opportunity of flight." See also *Lingerfell* v. *State,* 125 *Ga.* 4 (2) (53 S. E. 803, 5 Ann. Cas. 310); *Dunn* v. *State,* 13 *Ga. App.* 682 (3) (79 S. E. 764).

■ In special ground 5 movant avers, alleges, and complains that the judge erred in instructing the jury as follows: "Now, gentlemen, you have been impaneled as fair and impartial jurors, free from any prejudices or bias, and you have been sworn to ·try this case on the evidence in the case. You are to take the evidence as it comes to you from the witness-stand, including the statement of the accused, and take the law as it comes to you from the court, and on these you are to make up your verdict." Movant contends that this charge excluded from the consideration of the jury certain documentary evidence introduced by and relied upon by the State and by the defendant. A similar error was charged in *Hamilton* v. *State,* 18 *Ga. App.* 295, 299 (10) (89 S. E. 449), and this court said: "It is further complained that the instruction to the jury

to base their verdict upon the facts 'as you get them from the witness-stand' excluded from their consideration documentary evidence. The documentary evidence in the case was identified by witnesses on the stand, and was part and parcel of their testimony, and the charge of the court did not limit in any way the jury's consideration of all the evidence adduced upon the trial." In the instant case it appears that the witnesses in their testimony identified the documentary evidence. It also appears that the defendant in his statement identified certain of the documentary evidence. Though technically inaccurate, and while it would have been better for the court to have instructed the jury that they should consider all the evidence, oral and written (and in a case where physical evidence is introduced to add this to the charge), in applying the law to the case, we do not think that the jury was in any way misled by the particular expression of the court of which complaint is made.

. The defendant contends that the above-quoted portion of the charge was error for the further reason that it excluded the testimony given on the previous trial by Charles A. Bickerstaff who is now dead, and "said evidence was read by E. A. Stephens, assistant solicitor-general, a part of which testimony was relied upon by movant to justify a requested charge on delusional insanity." With reference to this contention, we are of the opinion that this excerpt of the charge was technically inaccurate and inapt, but relative to the evidence of Bickerstaff, a witness who had testified from the stand on the former trial and who had died before the time of the present trial (and of course could not go upon the stand on this trial), his testimony was read to the jury by the assistant solicitor-general as evidence which had been delivered from the stand on the former trial. The testimony of Bickerstaff did not raise the question of delusional insanity, nor did the whole testimony in the case, including this testimony of Bickerstaff, present such evidence as to require or authorize the judge to charge on delusional insanity. The testimony of Bickerstaff was in favor of the State, and even if it had been entirely eliminated the result would have been harmful to the State and not to the defendant. The circumstances under which this testimony was read to the jury, the scope of the evidence in the entire case, and the general structure of the charge as a whole, lead us to the conclusion that it is apparent

that the charge did not withdraw from the jury any issue comprehended in the pleading and the evidence, and no error relative to the testimony of Bickerstaff or the documentary evidence harmful to the defendant is disclosed by the record. Especially is this true, since elsewhere in his charge the judge stated: "A reasonable doubt, gentlemen, is a doubt for which you can assign a reason, not an arbitrary or capricious doubt. It is a doubt that would grow out of the case itself from a lack of *evidence,* or from insufficient *evidence,* or from conflict in the *evidence* or from the defendant's statement, and it is such doubt as, *after you have conscientiously given consideration to the entire case* in an effort to arrive at the truth, would leave your minds uncertain and wavering as to what the truth is. That would be a reasonable doubt. You are made by law, gentlemen, the exclusive judges of the *evidence.* You are the exclusive judges of the credibility of the *witnesses.*" (Italics ours.) See in this connection *Fowler* v. *State,* 187 *Ga.* 406 (1 S. E. 2d, 18); *Hendrix* v. *Bank of Portal,* 169 *Ga.* 264, 266 (6) (149 S. E. 879); *Harris* v. *State,* 55 *Ga. App.* 189, 190 (2) (189 S. E. 680); *Jones* v. *McElroy,* 134 *Ga.* 857 (5) (68 S. E. 729, 137 Am. St. R. 276); *Darden* v. *Washington,* 35 *Ga. App.* 777 (6) (134 S. E. 813). Compare *John Hancock Mutual Life Ins. Co.* v. *Davis,* 50 *Ga. App.* 266 (177 S. E. 822), cited by plaintiff in error.

■ Special ground 6 complains of the court's failure to charge upon request as follows: "I charge you that if you believe that the defendant made any threat to sue the witness Woodruff and to attach his property, and if you find that acting under that threat the witness Woodruff assented to the witness Glenn going out of the presence of the defendant for the purpose of securing $30,000 and delivering it to the defendant, I charge you that the defendant would not be guilty of robbery." The defendant contends that the request was warranted by the defendant's statement, and a failure to so charge was error because the same constituted part of the defense made by the defendant. We recognize the rule that if a theory of law is raised only by the defendant's statement, and there is an appropriate, timely, written request to charge such theory, it is reversible error to fail to charge that theory. *Wrye* v. *State,* 99 *Ga.* 34 (25 S. E. 610); *Cain* v. *State,* 7 *Ga. App.* 24 (65 S. E. 1069); *Abernathy* v. *State,* 51 *Ga. App.* 452, 454 (180 S. E. 753). See also *Roberts* v. *State,* 114 *Ga.* 450 (40 S. E. 297). "But even

332

conceding that each of the written requests embodied a correct statement of the abstract law as heretofore announced by this court, the trial judge properly declined to give them in charge; for to have done so would have been to unduly stress this feature or phase of the case. A defendant is entitled to a concrete application of the law to the peculiar facts of the case, if he presents a timely written request to charge; but he is not entitled to an elaboration of the abstract law upon a single phase of the case to such an extent as will give to it undue prominence." *Harrell* v. *State,* 121 *Ga.* 607, 611 (49 S. E. 703). In *Southern Railway Co.* v. *Wilcox,* 59 *Ga. App.* 785, 790 (2 S. E. 2d, 225), this court, in refusing to give the requested charge, "If you find from the evidence that the plaintiff ran his car into the side of the engine or train, I charge you that the plaintiff can not recover in this case, and you should find for the defendant," said: "This requested charge was a hypothetical statement by way of instruction, and was insufficient because it embraced but a part of the issues and ignored all facts necessary to be found as bases for the verdict." It is true that the *Wilcox* case was a civil case; however, the same rule governs in a case wherein a citizen is charged with a crime. In other words, the judge in the instant case did not err in refusing the requested charge, for the requested charge in this case would have directed the attention of the jury specially to a particular fact, amongst a great number of facts of which the evidence consisted, and to have so charged would have been to unduly stress this feature or phase of the case. The requested charge was insufficient because it embraced but a part of the issues and ignored all facts necessary to be found as bases for the verdict. In addition, the charge when considered as a whole covered plainly and in substance the principles of law stated in the requested charge, and the failure to give the charge in the language requested was not reversible error. *Southern Railway Co.* v. *Wilcox,* supra.

■ Special ground 7 complains that the judge erred in failing to charge, upon request, on delusional insanity; that is, to charge the jury in effect that if they believed the defendant was obsessed with the hallucination or delusion that the witness Woodruff was indebted to him in the sum of $30,000, and this delusion so acted upon the defendant that he was unable to distinguish between right and wrong, and while under such delusion he compelled the witness

Glenn, at the point of a gun, to deliver to him said sum, the defendant would not be legally responsible and the jury would be authorized to acquit him. The judge did not commit reversible error in failing to so charge. After a careful consideration of the evidence we are of the opinion that it did not warrant a charge on delusional insanity. But, conceding that the evidence warranted a finding that the defendant did act under such delusion, we are of the opinion that what the defendant insanely believed, were it true, would not justify robbery by intimidation. *McKinnon* v. *State,* 51 *Ga. App.* 549, 556 (181 S. E. 91). "If the delusion is as to a fact which would not excuse the act with which the prisoner is charged, the delusion does not authorize an acquittal of the defendant." *Mars* v. *State,* 163 *Ga.* 43, 60 (135 S. E 410). Here we have the defendant going into the office of a citizen of this State and demanding of him, at the point of a gun, that he pay an alleged indebtedness of $30,000 because he was under the delusion that the citizen owed him that amount. Was this delusion that this citizen owed him (defendant) $30,000 such a delusion as would acquit the defendant of criminal responsibility, if, while laboring under such a delusion, he committed the act of pointing a pistol at another, and by intimidation took the money of such person? We think not. The law has prescribed an adequate remedy for the collection of debts, if they exist. It will not allow the collection of debts at the point of a pistol. There was no evidence to warrant a charge on delusional insanity, and the judge did not err in refusing to charge as requested. The case of *Flanagan* v. *State,* 103 *Ga.* 619 (30 S. E. 550), relied upon by plaintiff in error, is distinguishable from the instant case. In that case the evidence was sufficient to warrant a charge on delusional insanity, and the delusion, if true, would have justified the act; whereas in the instant case the evidence did not authorize such a charge and the delusion, if true, would not have justified the act. *Taylor* v. *State,* 105 *Ga.* 746, 777 (31 S. E. 764), cited by the defendant (plaintiff in error), sustains the position taken by this court and is not authority for the defendant's position.

■ In special ground 8 the defendant contends that he presented a timely, written request that the judge reduce his charge to writing, and that while this request was complied with as to the original charge, yet, when the jury, after deliberating for a time,

returned and asked for a recharge, the judge did not reduce the whole of this recharge to writing, read it to the jury, and file it with the clerk, as required by Code, §§ 81-1102, 81-1103; but, instead, wrote and filed only the additional charge, and waited until several months thereafter to reduce to writing and file that part of the recharge which the judge reread from his original charge. With respect to this special ground the judge certified: "Movant, as alleged in said ground, requested that the court deliver a written charge to the jury, said request being delivered to the court before the argument of counsel had begun. The court prepared a written charge, which is correctly set out and quoted in this ground of the amendment. This written charge was read verbatim to the jury, and was immediately filed with the clerk. The jury, after having retired and considered the case for a time, requested to be recharged on certain features. The court thereupon reread to the jury verbatim from the written charge which had been delivered and which had been filed with the clerk, and wrote out and read to the jury verbatim the additional matter set out and quoted on page 24 of this amendment, which bears the signature of the judge and the entry of filing on the 28th day of October, 1938, and signed by C. E. Hartsfield, deputy clerk. This additional matter, which was so written out and read to the jury, was immediately filed with the clerk. The original charge from which the court reread a portion was at the same time refiled with the clerk. The court did not, either in the original charge or in the recharge to the jury, deliver any charge whatsoever except that which had been written out and which was filed with the clerk, as above stated."

It has been said by the Court of Appeals that "The principal object in requiring the charge to be reduced to writing, and read to the jury as written, and then filed with the clerk of the court, is to prevent disputes between the judge and counsel as to what was the charge." *Dowling* v. *State*, 7 *Ga. App.* 613, 614 (67 S. E. 697); *Homer* v. *State*, 6 *Ga. App.* 667, 669 (65 S. E. 701); *Fry* v. *Shehee*, 55 *Ga.* 208, 214. Suppose the judge in this case had reread verbatim et literatim to the jury the entire charge which he had already delivered to the jury and filed with the clerk, and had, immediately after rereading a second time the entire original charge to the jury, refiled it with the clerk, would it have been necessary, before rereading it, to have rewritten and refiled the entire original

charge when he was going to reread it word for word, thus having the same written charge in the record twice? We think not. Then, because he only reread a portion instead of all the original charge, but refiled the entire original charge, would it demand a new trial? We think not. The refiling of the entire original charge was a refiling of all of its parts. Everything the judge charged in this case was written out, read to the jury, and then filed with the clerk immediately after the reading, and any error in the charge or recharge could have been ascertained immediately after the jury had retired to consider their verdict. In short, when the jury returned and asked for additional instruction which the court gave, in part from the original written charge and in part outside thereof, and refiled the original charge and reduced the part of the recharge given outside of the original charge to writing, and then read it to the jury, and filed it with the clerk, the court did not commit reversible error. *Central of Georgia Railway Co.* v. *Perkerson,* 115 *Ga.* 547 (41 S. E. 1018); *Bowden* v. *Achor,* 95 *Ga.* 243, 245, 256 (22 S. E. 254).

The mere fact that several months after the trial and before the motion for new trial was heard, the judge, at the request of counsel for the defendant, certified as correct and filed with the clerk a transcript of his recharge (containing parts of his original charge which he had reread in his recharge), which transcript was unnecessarily taken down by the court's reporter, does not constitute reversible error in view of the fact that none of the transcript contradicts the certificate of the trial judge that "the court did not, either in the original charge or in the recharge to the jury, deliver any charge whatsoever except that which had been written out, and which had been filed with the clerk." As to the issue of writing out, reading, and filing the charge or recharge delivered to the jury, which is raised in this ground of the motion, the transcript of the stenographic notes was not material. It may be that the judge wished to allow counsel for the defendant and the courts the opportunity to compare the stenographic transcript, purporting to show what the judge reread in his recharge from the original charge, with the original charge itself, and when we make such a comparison, the two correspond with each other verbatim. The question is whether or not the judge (not the reporter) reduced the charge and recharge to writing before reading it to the jury

and then filing it with the clerk. The facts that the reporter took stenographic notes thereof and transcribed them, and that they were not filed until several months later are immaterial and do not affect the merits of this ground.

9. The general grounds are not argued or mentioned in the briefs of the plaintiff in error. However, the evidence authorized the verdict.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J. Relative to ground 3 of his motion for new trial, plaintiff in error contends, in his motion for rehearing, that the record shows "that the court refused to permit the defendant to argue to the court on a point of law, in violation of his constitutional rights." In considering ground 3 of the motion for new trial this court decided that the trial court did not abuse its discretion in refusing to allow the defendant himself, in addition to his leading counsel, to also conduct the cross-examination of the witness. The record discloses that the jury were sent from the court-room during the cross-examination of a State's witness by defendant's leading counsel so that the court might determine whether or not the following question would be admissible: "Do you know whether any demand was made on any insurance company for any alleged losses the bank is alleged to have sustained by reason of a robbery?" The court, after an objection was interposed by counsel for the State, said to counsel for the defendant: "I will hear from you." Then the following occurred: Mr. Finch: "Thank you, your Honor. Your Honor, I propose to show that in one indictment Mr. Moyers is charged with robbing Mr. Glenn and Mr. Woodruff of $30,000, the property of the Trust Company of Georgia. He [Glenn] has testified repeatedly in this case that he went down and got the money and it was money of the Trust Company of Georgia; that he didn't have it. I think it is highly material for the purpose of showing, for the purpose of attacking his credibility in saying it was the bank's money, when the bank was amply protected by an insurance policy, and if it was the bank's money and the bank had been robbed as he testified they have, he had the simple expedient of calling upon the bonding company to pay it off, and not pay it off himself. I say that is a circumstance and fact that the jury should be entitled to consider in pass-

ing upon his credibility." The court: "Your argument is [that] the rational thing to do was to say nothing about the money, not mention the shortage, and call on the bonding company to pay it off?" Mr. Branch: "And not try to catch the robber." Mr. Finch: "I am not saying what the rational thing is." The court: "We don't want to do vain things. I think a court trial ought to proceed along common logical lines. Your point is the bank ought to be reimbursed?" Mr. Finch: "No. I say it is a circumstance the jury should consider." The court: "I don't think so. I think it is irrelevant." Mr. W. T. Moyers (the defendant): "Your Honor, the bank would not." The court: "I can not hear from you, Mr. Moyers." It seems to us that where leading counsel for the defendant asks a question on cross-examination of the State's witness and the State's counsel objects to the question as being irrelevant and the judge sends the jury from the court-room and gives the defendant's leading counsel, who is conducting the cross-examination, a reasonable opportunity to argue the question of the admissibility of the question and the answer thereto, and the defendant's leading counsel so does, the judge does not abuse his discretion in refusing to hear further argument from other of the defendant's counsel, or from the defendant himself, when the judge terminates the argument in order that he may pass upon the question thus propounded on cross-examination and proceed with the trial. This argument as to the admissibility of such question during the cross-examination was pertinent to, and in effect a part of, the cross-examination. We can not see that the judge abused his discretion, especially where the question was clearly irrelevant and inadmissible and has been so determined by this court. The question already argued by the defendant's leading counsel and apparently sought to be argued further by the defendant himself, clearly related to the right of the defendant to cross-examine the witness on a matter which was clearly irrelevant.

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*